UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JAMES MCDUFFIE,

       Plaintiff,

  -v-                                         No.  04 Civ. 05995 (LTS)(HBP)

ELI LILLY AND COMPANY and
KATHRYN KEITH,

       Defendants.

-------------------------------------------------------x

## OPINION AND ORDER

       James McDuffie ("McDuffie" or "Plaintiff"), a former pharmaceutical sales representative for Eli Lilly and Company ("Eli Lilly"), brings this civil action asserting claims for discrimination based on race and age in violation of the New York State Human Rights Law ("NYSHRL") and discrimination based on his military status in violation of the Uniformed Services Employment and Reemployment Act ("USERRA"), 38 U.S.C. §§ 4301-4333, against Eli Lilly and Kathryn Keith ("Keith"), a district manager who supervised Plaintiff for part of his employment at Eli Lilly.  Plaintiff also alleges that Eli Lilly breached an employment agreement by failing to reimburse Plaintiff for legitimate business expenses incurred while Plaintiff was employed by Eli Lilly.  The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

       Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The Court has reviewed thoroughly and considered carefully all of the parties' submissions and, for the reasons explained below, Defendants' motion is granted.

<u>BACKGROUND</u>

The following material facts are undisputed unless otherwise indicated.  Plaintiff McDuffie, who alleges in his complaint that he is 52 years old, is an African-American male and is an Army reservist.  Plaintiff began working for Eli Lilly as a pharmaceutical sales representative for the Bronx, New York, territory in 1999.  (Pl.'s Dep. at 41-42.)  Plaintiff's job involved "making sales calls on physicians and trying to persuade them to prescribe Lilly products" as well as "complying with all the administrative obligations" required by Lilly.  (Pl.'s Dep. at 342.)  Plaintiff's administrative duties included generating and filing expense reports with substantiating documentation, keeping track of pharmaceutical samples that he received and gave away, including filling out and submitting sample cards, pre-planning and logging sales calls, and checking and responding to email and voicemail.  (Pl.'s Dep. at 50-51, 57, 60-61, 64, 229.)  Plaintiff was also required to enter data into his laptop regarding when he was out of his territory.  (Pl's Dep. at 61.)  In terms of the balance between sales work and administrative work, Plaintiff testified in his deposition that his first manager, Marino Garcia, communicated to him that his job was eighty percent sales and twenty percent administrative (Pl.'s Dep. at 43-44), but Plaintiff clearly understood that complying with administrative obligations was part of his job.  (Pl.'s Dep. at 342.)  Plaintiff understood the steps in Eli Lilly's progressive disciplinary system.  (Pl.'s Dep. at 140-141.)  This disciplinary model consists of a verbal warning, a written warning, probation, and termination.  (<u>Id.</u>; <u>see</u> <u>also</u> Keith Dep. at 85.)

Plaintiff was supervised by several different district managers over the course of his employment at Eli Lilly.  Defendant Keith became the district manager for the Delta sales division, New York City district, on July 1, 2001, and held that position until approximately June

2003. (Keith Dep. at 7.) Although Plaintiff had very strong sales (Pl.s' Dep. at 144), Plaintiff did not comply with his administrative obligations. Plaintiff received verbal and written warnings from district managers as a result of his lack of compliance. (Pl.'s Dep. at 72; Defs' Ex. C "11/10/00 Email from Marino Garcia" (documenting a verbal warning given the previous day in connection with Plaintiff's failure to submit reports and to check voicemail and email on a daily basis); Pl's Dep. at 80; Defs' Ex. D "5/15/01 Memo from Julie Joyce" (informing Plaintiff that his performance is unacceptable, specifically referencing Plaintiff's failure to reconcile his sample inventory, to record samples in the Eli Lilly database, to regularly mail sample cards, to accurately record physical inventory and to report a theft).)

Plaintiff's non-compliance with his administrative obligations continued after Defendant Keith became district manager. Following "ride alongs" with Plaintiff in October and November 2001, Keith provided Plaintiff with feedback identifying aspects of Plaintiff's administrative work that he needed to improve. (See Defs' Exs. F-G.) In May 2002, Plaintiff received a verbal warning from Keith, citing Plaintiff's continued failure to meet administrative obligations and outlining an action plan to address problems. (See Defs' Ex. H.) Following ride alongs in October 2002, Plaintiff received additional feedback from Keith regarding his failure to comply with his administrative obligations, noting that there had already been many conversations on this subject. (See Defs' Ex. I.) Keith issued a written warning to Plaintiff on 12/18/02, citing his failure to submit documents or information that had been requested, his failure to enter timely his post-call notes, his failure to adhere to Eli Lilly's Good Promotional Practices ("GPP"), his entering of information inconsistent with the definition of a sales call. (See Defs' Ex. J.) The written warning also outlined certain performance expectations that

would have to be addressed to improve his performance to an acceptable level. (Id.) This written warning included a warning that failure to meet expectations and sustain acceptable performance and conduct might lead to further disciplinary action, including probation or separation. (Id.) In late February or early March, Keith drafted a notice of probation for Plaintiff based on Plaintiff's continued unacceptable performance with respect to his administrative obligations. (See Defs' Ex. K.) This notice was never actually delivered to Plaintiff. (Keith Dep. at 144.)

Plaintiff acknowledges that he had trouble meeting his administrative obligations. He admits that other sales representatives were better at complying with Eli Lilly's administrative requirements. (Pl.'s Dep. at 334-335.) Plaintiff also admits that at least some of the warnings he received were fair and that the feedback Defendant Keith provided with respect to his administrative duties was accurate. (See Pl.'s Dep. at 86 (admitting that, based on the information that Julie Joyce had at the time, the written warning was fair); Pl.'s Dep. at 127, 128 (Plaintiff had no disagreement with the October and November 2001, or the October 2002, field visit feedback).)

At some point while Keith was Plaintiff's district manager, Plaintiff indicated to a person in the Human Resources Department that he was interested in transferring to the Beta sales division in Massachusetts. (See Pl.'s 141-144.) Plaintiff noted, in connection with the transfer request, that he had problems with the "administrative stuff." (Id.) According to Plaintiff, the manager in the Massachusetts division wanted Plaintiff to work for him and did not think the administrative issues were a big deal. (See Pl's 56.1 at 15.) Keith later told him that he would not be transferred. (Pl's Dep. at 145.) Defendant has a policy of not transferring

employees to another position in the company if they are currently in the disciplinary model. (See Shields Aff. ¶ 11.)  According to Defendants, Plaintiff was informed of this policy.  (See Defs' 56.1 at ¶ 55.)  Plaintiff denies knowledge of this policy and makes a conclusory assertion that another employee was transferred because he had done "something wrong."  (Pl's Dep. at 145.)

Plaintiff also acknowledges that he spent a lot of time during business hours dealing with military matters.  Plaintiff estimated that, right before he and his fellow reservists "got the word to go," he was spending at least ten minutes of every hour on the phone speaking to someone in connection with his military duty.  (Pl.'s Dep. at 295.)  Plaintiff had a separate cell phone for his military business to prevent it from tying up the phone he used for Eli Lilly business.  (Pl.'s Dep. at 164-165.)  According to Plaintiff, the only person in management who said anything about his military status was Keith.  (Pl.'s Dep. at 293, 340.)  And, although some of Plaintiff's co-workers discussed the military with him, those discussions were, according to Plaintiff, not derogatory.  (Pl.'s Dep. at 340.)  According to Plaintiff, Keith asked why he was "doing so much military time?"  (Pl.'s Dep. at 293.)  However, Keith never put anything related to Plaintiff's military status or business in his evaluations.  (Pl.'s Dep. at 299.)  Plaintiff does not believe that Keith took action against him because he was in the military.  (Pl.'s Dep. at 300.)  Instead, Plaintiff believes that Keith acted as she did because Plaintiff was not meeting Keith's expectations with respect to his administrative obligations, and because Keith thought that he was not ever going to be able to meet her expectations.  (Pl.'s Dep. at 300-301.)

The parties dispute the circumstances surrounding the termination of Plaintiff's employment with Eli Lilly.  Defendants proffer that Plaintiff resigned from his position at Eli

Lilly on the night of March 3, 2003. (Shields Aff. at ¶ 6). According to Defendants, Plaintiff verbally resigned, by phone, on two separate occasions that night – once to Kristi Shields, Plaintiff's Eli Lilly Human Resources representative, and again to Keith. (Id.; see also Keith Dep. at 30.) Keith states that she discussed the resignation with Kristi Shields and confirmed that a verbal resignation was sufficient to be considered an official resignation from Eli Lilly. (Keith Dep. at 36-38.) Shields' affidavit states that, during her conversation, she confirmed with Keith that the resignation had been accepted by the company. (Shields Aff. at ¶ 8.) According to Keith, Plaintiff called her around lunchtime the following day and said that, because of a slip and fall accident that occurred that morning, he was unable to come to the Eli Lilly premises to resign. (Keith Dep. at 39.) However, when Keith told Plaintiff he had already resigned, Plaintiff disputed the resignation, citing a need for a health benefits, and informed Keith that he would be contacting his lawyer. (Id.)

Plaintiff contends that he did not resign, but also testified in his deposition that he does not remember exactly what he said in the May 3, 2003, calls. (Pl.'s Dep. at 157-159.) According to Plaintiff, his position is that he was terminated. (See Pl.'s Dep. at 190 ("Q: What do you tell people when you talk about why you're not working for Lilly anymore? A: They fired me.").) Plaintiff also contends that Eli Lilly should have promoted him based on his sales accomplishments at Lilly, although he acknowledges that he never requested a promotion and, as noted above, acknowledges that he received fair criticism concerning his performance of the administrative aspects of his job. (Pl.'s Dep. at 315-316, 322-323.) Plaintiff alleges that the failure to promote him and refusal to transfer him were based on race and age discrimination. (Pl.'s Dep. at 322-323, 325-336.) Plaintiff, however, admits that no one at Eli Lilly ever said

anything derogatory about his race or his age and he has not identified any similarly situated non-minority or younger individuals who were treated differently. (Pl.'s Dep. at 337.)

Plaintiff asserts that Defendants have failed to pay for all of his legitimate business expenses. Plaintiff was issued a company credit card during his employment at Eli Lilly. (Defs' 56.1 at 90.) Plaintiff admits that he was aware that he was personally liable for expenses incurred on the card. (Pl.'s Dep. at 254.) Plaintiff was aware that he had to fill out expense reimbursement requests and submit supporting documentation in order to be reimbursed. (Pl.'s Dep. at 233.) Plaintiff was aware that there were limits on the types and amounts of expenses that would be reimbursed and that reimbursement was subject to district manager approval. (Pl.'s Dep. at 229-232.) Plaintiff had, during the course of his employment, submitted expense requests that were rejected for lack of documentation or information, and was given an opportunity to resubmit the reports. (Pl.'s Dep. at 232.) According to Defendants, Keith approved all charges that Plaintiff expensed through the reporting system, and Shields explained to Plaintiff that he would need to complete paper expense reports in order to be reimbursed for any additional outstanding expenses. (Keith Dep. at 187; Shields Aff. at ¶ 10.)

Plaintiff originally testified that he was not aware of any expense reports that he submitted to which he was never given a response. (Pl.'s Dep. at 232.) However Plaintiff subsequently testified that some of the submitted expense reports may not have been paid. (Pl.'s Dep. at 241-244.) Plaintiff also acknowledged at his deposition that he was unable to identify some of the charges on the card and that he had no reason to believe that Eli Lilly would be responsible for paying for them. (Pl.'s Dep. at 263.) Plaintiff has not proffered evidence, in response to Defendants' summary judgment motion, of any specific expenses that he contends

were legitimately chargeable to Eli Lilly, that were properly submitted and remain unpaid.

DISCUSSION

Summary judgment in favor of a moving party is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,' " and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  As the Second Circuit has explained, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts[. T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original).). "[M]ere conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

NYSHRL Claim

The NYSHRL provides a civil remedy to employees against employers for age and/or race discrimination.  (See N.Y. Exec. Law §§ 296, 297 et seq.)  Claims pursuant to the NYSHRL are analyzed under the three-part burden shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565

n. 1 (2d Cir. 2000) ("consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims"); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("[W]e analyze an age discrimination claim brought under the [state and city human rights laws] as we would any other Title VII claim.").

In the context of a motion for summary judgment, a plaintiff must first proffer evidence sufficient to establish a prima facie case of prohibited discrimination. McDonnell Douglas Corp., 411 U.S. at 802. To establish a prima facie case of race or age discrimination, Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. McDonnell Douglas Corp., 411 U.S. at 802; Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d at 466. Once a plaintiff has made out a prima facie case, the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions. McDonnell Douglas Corp., 411 U.S. at 802. An employer sustains its burden "by producing any evidence of nondiscriminatory reasons, whether ultimately persuasive or not." Weeks v. N.Y. State Div. of Parole, No. 00 Civ. 5865, 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). "The employer need not prove by a preponderance of the evidence that the reasons for his actions were not discriminatory, but may simply present clear and specific reasons for the action." Gibbs v. Consol. Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89 (S.D.N.Y.1989) (internal quotations omitted). If the employer meets its burden, the plaintiff then is required to "present sufficient evidence for a reasonable jury to conclude that [the defendant] discriminated against him" in the manner prohibited by the statute, and that the defendant's stated reason is a pretext

for the prohibited discriminatory action.  Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000).

Plaintiff's claims are based on four different alleged adverse employment actions: a failure to promote him; a failure to grant a transfer to Massachusetts; removal of Dr. Abdullah from his assigned area; and termination of his employment.  For the reasons explained below, Plaintiff has failed to make out a case of rase or age discrimination in connection with any of these alleged adverse employment actions.

Failure to Promote

Plaintiff has failed to make out a prima facie case of age or race discrimination in connection with Defendant's failure to promote him.  Plaintiff fails to show that he ever requested a promotion; he acknowledged in his deposition testimony that he never requested a promotion.  See, e.g., Pannikadavil v. New York City Health and Hospitals Corp., No. 04 Civ. 8916, 2008 WL 2876525, at * (S.D.N.Y. July 23, 2008) ("To establish a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, however, Plaintiff must show that he applied for and was rejected from an available position.")  Furthermore, even assuming that Plaintiff could establish a prima facie case of age and/or race discrimination in connection with a failure to promote him, the undisputed evidence documents unsatisfactory job performance as a legitimate nondiscriminatory reason for this failure to promote.  Defendants have proffered substantial evidence of Plaintiff's failure to satisfy his administrative obligations, of repeated warnings with respect to those failures and of multiple attempts to assist Plaintiff in increasing his compliance with his obligations.  Plaintiff has acknowledged his own inability to meet his obligations with respect to his administrative obligations.  Plaintiff has not proffered evidence sufficient to raise a genuine issue of material fact as to pretext, and Defendants are entitled to

dismissal of this claim as a matter of law.

### Failure to Transfer

Plaintiff has also failed to establish a prima facie case of age or race discrimination in connection with the denial of a transfer to Massachusetts. Plaintiff has not shown that he was qualified for the requested transfer in light of the undisputed unsatisfactory performance record and the undisputed evidence that company policy precluded transfers while under the disciplinary model. The claim will, accordingly, be dismissed.

### Dr. Abdullah

Plaintiff has failed to establish a prima facie case in connection with Dr. Abdullah's removal from his territory, because he has failed to proffer sufficient evidence that Dr. Abdullah's removal constituted an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks and citations omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotations and citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. Although Plaintiff makes conclusory assertions that the removal of Dr. Abdullah from his territory "is costing me money," (Pl's Dep. at 116), and, that his bonus was affected by the removal (Pl's Opp.), Plaintiff has proffered no specific evidence of any adverse impact. See Jones v. Smithkline Beecham Corp., 309 F. Supp. 2d 343, 352 (N.D.N.Y. 2004). Accordingly,

this claim will be dismissed.

        Termination of Employment

        Plaintiff has failed to establish a <u>prima facie</u> case of age or race discrimination in connection with his termination of employment with Eli Lilly.  Although Plaintiff asserts that he did not resign, he has testified that he cannot remember was said during the May 3, 2003, calls.  Thus, Plaintiff has failed to establish that any adverse employment action was taken against him.  Even if the Court construed the evidence to allow a reasonable factfinder to infer that there had been some misunderstanding in connection with the termination of employment or that Plaintiff did not intend to resign, such that what occurred was effectively a termination, Defendant has proffered a legitimate non-discriminatory reason for the termination; both his district manager and the human resources person with whom he spoke understood him to have tendered his resignation and determined that an oral resignation was sufficient to be effective.  Plaintiff has not proffered sufficient evidence to raise a question of fact as to pretext for prohibited discrimination.  Plaintiff's conclusory allegations about his feelings about the workplace and conclusory assertions regarding workplace demographics are insufficient to raise a genuine issue of fact for discrimination pretext, particularly in light of his admittedly unsatisfactory performance history with respect to the administrative responsibilities of his job.

        Thus, Defendants are entitled to summary judgment dismissing all of Plaintiff's NYSHRL claims.

USERRA Claim[1]

The USERRA prohibits discrimination on the basis of military status.  38 U.S.C. § 4311.  "Congress passed USERRA in 1994 to clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions."  Woodward v. New York Health & Hospitals Corp., 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008) (internal quotations and citations omitted).  The statute applies to both reservists and non-reservists, and is to be broadly construed in favor of its military beneficiaries.  (Id.)

The burden-of-proof allocation formula for USERRA cases is the two-part framework articulated in NLRB v. Transportation Management Corp., 462 U.S. 393 (1983). See Gummo v. Village of Depew, 75 F.3d 98, 106 (2d Cir. 1996); see also Fink v. City of New York, 129 F. Supp. 2d 511, 520 (E.D.N.Y. 2001) ("[I]n the wake of the Second Circuit's opinion in Gummo v. Village of Depew, 75 F.3d 98 (2d Cir.1996), it appears that the NLRB framework is the preferable approach for USERRA cases.").  Under the NLRB framework, Plaintiff "carries his burden of proving a prima facie case of discrimination by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action."  Gummo v. Village of Depew, 75 F.3d 98, 106 (2d Cir. 1996) (internal citations and quotations omitted).  If a plaintiff establishes a prima facie case, "the employer may nonetheless escape liability by showing, as an affirmative defense, that it would have made the

---

[1] Although Plaintiff has not identified the specific section of USERRA that he alleges Defendants have violated, Defendants have addressed Plaintiff's USERRA allegations as arising under section 4311(a), which prohibits discrimination based on military status (see Defs' Mem. at n. 8), and Plaintiff does not dispute that this is the applicable section.  Thus, the Court addresses Plaintiff's USERRA claims as arising under section 4311.

same decision without regard to the employee's protected status." (Id.)

"The term 'motivating factor' means that, if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations." Robinson v. Morris Moore Chevrolet-Buick, Inc., 974 F. Supp. 571, 576 (E.D.Tex. 1997). "Discriminatory motivation may be proven through direct or circumstantial evidence, including but not limited to proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." Woodward, 554 F. Supp. 2d 348-49 (internal quotations and citations omitted).

Plaintiff's evidence proffered in response to this motion is insufficient, even when viewed in the light most favorable to him, to enable a rational fact finder to conclude that he has established his prima facie USERRA case by a preponderance of the evidence with respect to any of the complained-of actions or omissions. Plaintiff has proffered no direct evidence that anything of which he complains was motivated even in part by his military status. Indeed, while he alleges that Keith (to whom he attributes responsibility for the complained-of matters) asked him about his military obligations, he testified that he believed that her actions against him were based not on his military status but on his failure to meet his administrative responsibilities and her expectations in that regard. Plaintiff has not proffered any evidence of what his military obligations consisted of during the relevant time, nor has he provided any specific, non-

conclusory evidence that it was his military obligations that prevented him from meeting his administrative requirements of his employment with Eli Lilly.  Moreover, Plaintiff has not proffered any evidence that, to the extent that his military obligations were interfering with his administrative obligations, he raised this issue with his supervisors.

While the temporal proximity prong is present in that he appears to have been a reservist throughout his Eli Lilly employment, the other circumstantial factors are insufficient to support an inference of animus based on his military status.  He has proffered no evidence of inconsistencies between his treatment with regard to administrative noncompliance, and the consequences of such noncompliance, and other actions taken by Eli Lilly or Keith.  Nor has Plaintiff proffered any non-hearsay, non-conclusory evidence of differential treatment of similarly-situated employees.  There is no evidence of expressions of hostility toward the protected class.  Under these circumstances, the mere temporal connection is insufficient to support an inference of military status or obligations as a motivation for the complained-of actions.  Accordingly, Plaintiff has failed to proffer a prima facie case and Defendants are entitled to judgment as a matter of law dismissing Plaintiff's USERRA claim.

Claims Against Defendant Keith in her Individual Capacity

In light of the Court's conclusions as to the merits of Plaintiff's NYSHRL and USERRA claims, it is unnecessary to address the parties' contentions as to whether those claims are properly asserted against Keith in her individual capacity.

Breach of Employment Contract

Defendants are also entitled to judgment as a matter of law with regard to Plaintiff's breach of contract claim.  Plaintiff has failed to tender evidence identifying any

outstanding, reimbursable expenditure for which he properly made a reimbursement request that was not fulfilled. Accordingly, Defendants' motion for summary judgment is granted as to this claim as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully requested to terminate docket entry no. 42, enter judgment in Defendants' favor and close this case.

SO ORDERED.

Dated: New York, New York
March 31, 2009

LAURA TAYLOR SWAIN
United States District Judge